**In re Richard Bradley MILLER, Debtor.**

**Mandalay Resort Group, Appellant,**

v.

**Richard Bradley Miller, Appellee.**

BAP No. CC–02–1298–PKMa.
Bankruptcy No. LA 01–41847–SB.
Adversary No. LA 02–01149–SB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 2003.

Filed April 2, 2003.

Karen A. Ragland, Garwacki & Associates, Los Angeles, CA, for Mandalay Resort Group.

Before PERRIS, KLEIN and MARLAR, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Appellant Mandalay Resort Group ("Mandalay") appeals from the bankruptcy court's dismissal of its Complaint to Determine Nondischargeability of Debt and for Entry of Judgment for Money ("the complaint"). The bankruptcy court dismissed the complaint on the basis that gambling debts are not enforceable under California law. The bankruptcy court erred in dismissing the complaint because Nevada law, not California law, applies and gambling debts, like the one at issue here, are enforceable under Nevada law. We REVERSE and REMAND.

## FACTS

Debtor, a California resident, obtained $40,000 in credit while gambling at Mandalay, a casino located in Nevada. The debt is evidenced by three credit instruments known as "markers." After debtor filed his chapter 7[1] petition, Mandalay initiated an adversary proceeding in the bankruptcy court seeking a money judgment and a

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

determination that the debt is nondischargeable under § 523(a)(2)(A).

Prior to a scheduled status conference, the bankruptcy court issued a tentative ruling, announcing its intention to dismiss the complaint based on the court's conclusion that gambling debts are unenforceable under California law. Mandalay requested and was given the opportunity to brief the issue. After an additional hearing, the bankruptcy court dismissed the complaint, concluding that gambling debts are not enforceable under California law. Mandalay timely appealed.

## ISSUE

Whether the bankruptcy court erred in dismissing the complaint.

## STANDARD OF REVIEW

■■■ The bankruptcy court's dismissal of the complaint is akin to a dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). We review a bankruptcy court's dismissal for failure to state a claim de novo. *In re Rogstad,* 126 F.3d 1224, 1228 (9th Cir.1997). A trial court's decision concerning the appropriate choice of law is a question of law, which we also review de novo. *Aqua–Marine Constructors, Inc. v. Banks,* 110 F.3d 663, 667 (9th Cir.1997).

## DISCUSSION

■■■ In dismissing the complaint, the bankruptcy court did not address § 523 dischargeability law. Instead, it dismissed the complaint based on a determination that Mandalay held an unenforceable claim. With certain exceptions not relevant here, a claim in bankruptcy must be

disallowed if it "is unenforceable against the debtor ... under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). Generally, nonbankruptcy law is applied to determine the existence and validity of a claim in bankruptcy.[2] *In re Johnson,* 756 F.2d 738, 741 (9th Cir.1985). *See also Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)(treble damages recoverable under applicable state law are a debt that is nondischargeable under § 523(a)(2)).

We begin by addressing, and rejecting, Mandalay's assertions of error. We then explain why the bankruptcy court nevertheless erred in dismissing the complaint.

### I. *Mandalay's Arguments*

■■■ Mandalay's first argument is that "whether a debt incurred for gambling purposes should be deemed nondischargeable must be analyzed ... from the perspective of ... § 523(a)." Mandalay's Opening Brief, 5:20–22 (emphasis removed). The fundamental problem with this argument is that it assumes the existence of an enforceable debt to which a § 523(a) analysis may be applied. Mandalay appears to be suggesting that some unspecified federal standard governs the determination of the existence of an enforceable debt in bankruptcy. This is incorrect. Generally, the existence and validity of a debt is determined by reference to nonbankruptcy law. Absent an enforceable prepetition debt, there is no debt to except from discharge.

---

2. This general rule is subject to certain exceptions. For example, the Ninth Circuit Court of Appeals has held that the running of a state statute of limitations for a fraud claim "does not foreclose a later determination by the bankruptcy court that what occurred was fraudulent and therefore nondischargeable" under § 523(a)(2). *Banks v. Gill Distribution Ctrs., Inc.,* 263 F.3d 862, 869 (9th Cir.2001).

Mandalay cites a number of cases analyzing the dischargeability under § 523(a)(2)(A) of credit card debt incurred for gambling purposes. These cases are factually distinguishable and do not support reversal. All involve credit card debt, not the direct extension of credit by a casino. Therefore, the validity or enforceability of the underlying debt was not an issue in any of the cases relied upon by Mandalay.

Mandalay's second argument is that the bankruptcy court erred in dismissing the complaint, because California law does not apply. Mandalay argues that California law on the enforceability of gambling debts is preempted by § 523 of the Bankruptcy Code pursuant to the Supremacy Clause of the U.S. Constitution. We reject this argument.

■■■ The Supremacy Clause invalidates state laws that are contrary to or interfere with federal law. U.S. CONST. art. VI, cl. 2.; *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045 (9th Cir.2001). Congressional intent to preempt state law must be clear and express. *Cybernetic*, 252 F.3d at 1046. While the dischargeability of debts in bankruptcy is governed by federal law, the existence and validity of a debt is determined by reference to state law. Congress did not intend to preempt state law on this point. To the contrary, it provided in § 502(b)(1) that a claim cannot be allowed if it is unenforceable under state law. *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1247 (9th Cir.1999).

## II. *Nevada Law, Not California Law, Applies*

We nevertheless agree that the bankruptcy court erred in applying California law, and we exercise our independent power to resolve an issue that is properly before us by identifying and applying the proper construction of the governing law. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

■■■ The real question presented in this appeal is whether California or Nevada state law applies to the determination of the enforceability of Mandalay's claim. We conclude that Nevada law, which enforces gambling debts like the one at issue here, applies.[3]

■■■ In the Ninth Circuit, federal common law choice of law rules apply in bankruptcy cases. *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002); *In re Lindsay*, 59 F.3d 942, 948 (9th Cir.1995); *In re Gibson*, 234 B.R. 776, 779 (Bankr.N.D.Cal.1999). Federal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws ("the Restatement"). *Vortex*, 277 F.3d at 1069; *Gibson*, 234 B.R. at 779.

■■■ With certain exceptions not relevant here, and in the absence of an effective choice of law by the parties,[4] the

---

3. "California has a strong, broad, and long-standing public policy against judicial resolution of civil disputes arising out of gambling contracts or transactions." *Kelly v. First Astri Corp.*, 72 Cal.App.4th 462, 84 Cal.Rptr.2d 810, 819 (1999). Based on our conclusion that Nevada law applies, we need not, and therefore do not, decide whether the debt owed to Mandalay would be enforceable under California law based on the current public policy of that state.

4. Debtor's credit application and the markers are included in the excerpts of record. These documents are not entirely legible. However, it does not appear that the parties made an effective choice of law. While debtor agreed to submit to the jurisdiction of a Nevada court, the parties did not designate the applicable law.

validity of a contract is determined in accordance with § 188 of the Restatement. Under that section, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which ... has the most significant relationship to the transaction and the parties ...." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971).

> [T]he contacts to be taken into account ... to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* at § 188(2). With certain exceptions not relevant here, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* at § 188(3).

■■■■■ A consideration of the relevant factors leads us to conclude that Nevada has the most significant relationship to the transaction and the parties. Factors (a), (b) and (c) all weigh in favor of applying Nevada law.[5] Debtor acknowledges in the application and markers that he incurred the debt in Nevada. The place of perfor-

mance was the Nevada casino. With regard to factor (e), the interests of both California and Nevada would be furthered by application of their respective laws. However, the fact that debtor traveled to Nevada and sought out a loan there from Mandalay tips the balance in favor of applying Nevada law. *See id.* at § 188 cmt. e, illus. 1.

Our conclusion that Nevada law applies is consistent with *In re Smith,* 66 B.R. 58 (Bankr.D.Md.1986), *aff'd on other grounds,* 77 B.R. 33 (D.Md.1987), and *In re Knight,* 76 B.R. 857 (Bankr.M.D.Ga.1987). The courts in these cases did not explicitly apply the conflict of law analysis set forth above. However, the courts in both cases concluded that, when considering the enforceability of gambling debts in bankruptcy, the law of the place of contracting applies, unless the parties indicate otherwise in their contract. *Smith,* 66 B.R. at 61; *Knight,* 76 B.R. at 860.

■■■ Chapter 463 of the Nevada Revised Statutes concerns the licensing and control of gaming. Nev.Rev.Stat. § 463.368(1) states that "[a] credit instrument accepted on or after June 1, 1983, and the debt that the credit instrument represents are valid and may be enforced by legal process." Therefore, the debt at issue here is enforceable under Nevada law.

## CONCLUSION

The bankruptcy court erred in dismissing the complaint because Nevada law, not California law, applies and gambling debts, like the one allegedly owed to Mandalay in this case, are enforceable under Nevada

---

**5.** Factor (d), "the location of the subject matter of the contract," has no relevance here. This factor is only implicated where a con-

tract "deals with a specific physical thing ... or affords protection against a localized

law.[6]  We REVERSE and REMAND.

risk[.]''  Restatement (Second) of Conflict of
Laws § 188 cmt. e (1971).

**6.**  We express no opinion as to the merits of
any other defense that debtor may have to
Mandalay's claim, whether it should ultimate-
ly be allowed under § 502, or if the debt
should be excepted from discharge under
§ 523.