STATE GAMING CONTROL BOARD, Petitioner, *v.* PETER I. BREEN, DISTRICT JUDGE, SECOND JUDICIAL DISTRICT COURT, Respondent.

No. 13609

April 29, 1983                         661 P.2d 1309

*Brian McKay,* Attorney General, and *Claudia K. Cormier,* Deputy Attorney General, Carson City, for Petitioner.

*William M. O'Mara,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Petitioner seeks a writ of prohibition, or, alternatively, a writ of mandamus, barring the respondent court from proceeding in the case of Yong Chun Kim v. Nevada Gaming Control Board, Case No. 80-9046. For the reasons outlined hereafter, we grant the requested relief.

In January, 1980, Yong Chun Kim, the party beneficially interested in this proceeding, presented a winning keno ticket for $37,800.00 to the Club Cal-Neva in Reno, Nevada, where Kim was employed. Because a suspicion arose that Kim's ticket had been marked after the winning numbers for the keno game had been called, the club management refused to honor and pay the amount of the ticket.

Kim requested an investigation by the Nevada Gaming Control Board, petitioner herein. The Board's investigative agents determined that the club management was justified in refusing to pay.

Petitioner then held a hearing at Kim's request, after which the determinations and decisions of the investigative officers were affirmed.

Kim thereafter filed an action in district court for review of petitioner's determinations. The Board's motion to dismiss for failure to state a claim upon which relief could be granted was

denied. Petitioner thereafter filed a petition in this Court for a writ of prohibition to disallow the district court to proceed further with this case. Because the district court's order was based upon the erroneous conclusion that the court had jurisdiction to review the Board's decision, we grant the writ.

Until now, this Court has specifically left open the issue of whether administrative procedures regarding disputes between gaming patrons and state licensees are judicially reviewable. Corbin v. O'Keefe, 87 Nev. 189, 190, 484 P.2d 565 (1971). Under the circumstances of this case, we hold that they are not.

Under our statutes, a player/patron and a licensee/casino are provided unequal rights to judicial review of a Gaming Control Board decision.[1]

The Gaming Control Board, in fulfillment of its statutory duties to preserve public confidence and trust in licensed gaming, NRS 463.0129, is empowered to investigate the qualifications of applicants for gaming licenses and observe the conduct of licensees and other persons involved in licensed gaming operations. The Board may deny applications, or limit or revoke licenses, registrations or findings of suitability or approval. NRS 463.1405(1), (2). The Board may also conduct investigations and hearings. NRS 463.110, 463.310(1). The Board's power extends exclusively to state licensees and applicants for state licenses.

In December, 1972, the Board adopted "G.C.B. Bulletin No. 7," which sets up a procedure whereby gambling disputes between a patron and a licensee may be reviewed. Pursuant to that bulletin, if a patron lodges a complaint with the Gaming Control Board, the Board first conducts a preliminary investigation of the player's claim. Review of the investigative officer's decision may be requested by either the claimant or the licensee. This may be by either a review of the file or through an informal hearing.

If, after a hearing, the Board decides against the licensee, it may order payment of the player's claim. If the licensee refuses to pay, the Board may then file a complaint to initiate a hearing before the Nevada Gaming Commission. NRS 463.310, 463.312. Judicial review of the Commission's final decision or order is specifically allowed. NRS 463.315.

---

[1]Both the State Gaming Control Board and the Nevada Gaming Commission are expressly and entirely exempt from the provisions of the Nevada Administrative Procedures Act. *See* NRS 233B.039(1)(e). The statutory scheme regarding gaming licensing and control is found in NRS ch. 463.

If the Board decides in favor of the licensee, no further review is provided in the bulletin or the statute.[2]

The unequal right to review of Gaming Control Board decisions for patron and gaming establishments, where a gambling debt is at issue, is justified because of the different property interests held by each.

A patron, whose claim against a gaming establishment is founded upon non-payment of a gambling debt, holds no judicially cognizable property right. This Court has long held that gambling debts are unenforceable in the courts of this state. Neither a patron nor a gaming establishment may maintain a suit for the recovery of a gambling debt. Sea Air Support, Inc. v. Herrmann, 96 Nev. 574, 613 P.2d 413 (1980); Corbin v. O'Keefe, *supra;* Weisbrod v. Fremont Hotel, 74 Nev. 227, 326 P.2d 1104 (1971); West Indies v. First National Bank, 67 Nev. 13, 214 P.2d 144 (1950); Burke v. Buck, 31 Nev. 74, 99 P. 1078 (1909); Evans v. Cook, 11 Nev. 69 (1876); Scott v. Courtney, 7 Nev. 419 (1872).

Neither a player nor a licensee can assert a property right founded upon an unpaid gambling debt. With no claim other than a gambling debt, an aggrieved patron like Kim holds no interest which an adverse Board decision can affect. A licensee, on the other hand, has a property right in the retention of its license to do business. A Board order to revoke, modify, or limit a gaming license directly affects this property right. Before that right can be deprived, opportunity for notice and hearing must be afforded. NRS 463.310, 463.312.

That a patron may be incidentally benefitted by a licensee's compliance with a Board order to pay a patron cannot be seen as recognition of a patron's property right in the debt. A Board sanction against a licensee for non-payment is based on the licensee's failure to obey a Board directive rather than on failure to pay a valid gambling debt. The Board has no power to order a patron to pay a licensee's claim.

The purpose behind the procedures set up by the Board is to

[2]We are not faced with a cause of action for cheating, as was the case in the federal court cases of Berman v. Riverside Casino Corp., 323 F.2d 977 (9th Cir. 1963), and Zaika v. Del E. Webb Corp., 508 F.Supp. 1005 (D.C. Nev. 1981). For that reason, we decline to address whether the holdings regarding judicial review in those cases apply in the Nevada courts.

facilitate the perpetuation of public confidence in the integrity of the gaming industry. NRS 463.0129. It is not to afford an administrative remedy where no legal remedy exists. Because a patron has no property or liberty interest which could be deprived him by abuse of Board procedures, he can assert no basis for judicial review of those procedures.

Here, the district court was without jurisdiction to attempt to review the Board's determination on petitioner's complaint. For that reason, we hereby issue a peremptory writ of prohibition. NRS 34.320.